**In re NATIONAL WESTERN LIFE INSURANCE DEFERRED ANNUITIES LITIGATION.**

No. 05–CV–1018–JLS (LSP).

United States District Court, S.D. California.

July 12, 2010.

Andrew S. Friedman, Elaine A. Ryan, Bonnett Fairbourn Friedman and Balint, Phoenix, AZ, Ingrid M. Evans, Sundeep Patel, Waters Kraus & Paul, LLP, San Francisco, CA, Phong Le Tran, Rachel L. Jensen, Steven M. Jodlowski, Theodore Joseph Pintar, John J. Stoia, Jr., Robbins Geller Rudman & Dowd LLP, Stephen Richard Basser, Samuel M. Ward, William J. Ban, Barrack Rodos and Bacine, San Diego, CA, Larry Mark Golub, Barger and Wolen, Peter H. Mason, Robert W. Fischer, Jr., Spencer Persson, Fulbright and Jaworsky, Los Angeles, CA, for In re National Western Life Insurance Deferred Annuities Litigation.

## ORDER: GRANTING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

JANIS L. SAMMARTINO, District Judge.

Presently before the Court is Plaintiffs' renewed motion for class certification. (Doc. No. 192.) Also before the Court are Defendant's opposition (Doc. No. 187) and Plaintiffs' reply. (Doc. No. 195.) For the reasons stated, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

### BACKGROUND

The Court discussed the facts of this case in its Order denying Plaintiffs' first motion for class certification. (Doc. No. 176 (Prior Order) at 2.) Those facts remain materially unchanged and are incorporated by reference here. Of note, however, "plaintiffs Peter and Mary Glenane are no longer seeking to represent the proposed Classes" and "will continue to litigate their claims on an individual basis." (Memo. ISO Motion at 1 n. 1.)

### LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs motions for class certification. Under Rule 23, "[t]he party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571, 580 (9th Cir.2010) (quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d

1266 (9th Cir.2001)); *see also Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1308 (9th Cir.1977); *W. States Wholesale, Inc. v. Synthetic Industries, Inc.,* 206 F.R.D. 271, 274 (C.D.Cal.2002). "[W]hether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits," is not relevant to this inquiry. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey Int'l,* 452 F.2d 424 (5th Cir.1971)) (internal quotation marks omitted).

Rule 23(a) provides four requirements that must be met in any class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). As to Rule 23(b), the plaintiff need only show that any one of the three described scenarios is satisfied. Fed.R.Civ.P. 23(b).

■■■ On a motion for class certification, the Court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975). However, the Court is "explicitly requir[ed] . . . to probe behind the pleadings if doing so is necessary to make findings on the Rule 23 certification decision." *Dukes,* 603 F.3d at 589. In doing so, it may not "conduct a preliminary inquiry into the merits of [the] suit in order to determine whether it may be maintained as a class action." *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140. Nonetheless, the Court may "consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992); *see also Dukes,* 603 F.3d at 586–87. In considering this evidence, the Court must "avoid either party bootstrapping a trial or summary judgment motion into the certification stage." *Dukes,* 603 F.3d at 591; *see also Blades v. Monsanto Co.,* 400 F.3d 562, 567 (8th Cir.2005) ("The closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require." (citing *Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140)).

■■■ "Rule 23 'provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court.' If evidence not available at the time of certification disproves Plaintiffs' contentions that common issues predominate, the district court has the authority to modify or even decertify the class, or use a variety of management devices to address the individualized issues that have arisen." *Dukes,* 603 F.3d at 579 (citations omitted).

## ANALYSIS

### I. CLASS DEFINITIONS

■■■ During the development of class certification law, courts have read a requirement of adequate class definitions into Rule 23. They demand that the proposed definition identify "a distinct group of plaintiffs whose members [can] be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978). Thus, the class definition must supply "objective criteria" by which membership may be "presently ascertain[ed]," such as "a defendant's own actions and the damages caused by such actions, or even just geographical boundaries." *Campbell v. Pricewaterhouse-Coopers, LLP,* 253 F.R.D. 586, 593 (E.D.Cal. 2008). Which is not to say that the Court must be able to identify "every potential member . . . at the commencement of the action. As long as 'the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.' " *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal. 1998) (internal citations omitted). The primary goal of this inquiry "is to make it 'administratively feasible' for the court to determine individual class membership." *Campbell,* 253 F.R.D. at 593 (citing *Aiken v. Obledo,* 442 F.Supp. 628, 658 (E.D.Cal.1977)).

■■■ Plaintiffs "seek certification of both a nationwide [Racketeer Influenced and Corrupt Organizations Act (RICO) ] class and a California statewide class." (Memo. ISO Mo-

tion at 1.) They also state that their claims relate to only "four National Western deferred annuities: Confidence Flex 45, Confidence Flex 85, Future Assurance, and Benefit Assurance." (*Id.* (footnote omitted).) However, Plaintiffs do not provide exact class definitions in their motion.

Nonetheless, certain further statements narrowing the classes may be gleaned from the Complaint. For example, Plaintiffs apparently intend to limit these classes to "senior citizens (persons age 65 and older) who within the applicable statute of limitations of the date of the commencement of this action, purchased one or more National Western Life Insurance Company deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy." (Doc. No. 54(CAC) ¶ 136.) They also would exclude "defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons." (*Id.* ¶ 137.)

Thus, the Court construes Plaintiff's proposed classes as follows:

- *Nationwide Class:* Any senior citizen, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons, who within the applicable statute of limitations of the date of the commencement of this action, purchased one or more of the relevant National Western Life Insurance Company deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy.
- *California Class:* Any California senior citizen, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons, who within the applicable statute of limitations of the date of the commencement of this action, purchased one or more of the relevant National Western Life Insurance Company deferred annuities either directly, or through

the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy.

Given that the parties should be able to determine who is and who is not in the classes based on Defendant's records, the Court finds that these definitions adequately describe the proposed classes.

## II. RULE 23(A)'S REQUIREMENTS

■ Although Plaintiffs set forth their case under Rule 23(a), Defendant largely ignores these class certification requirements. Nonetheless, the Court has an independent duty to "make determinations that each requirement of Rule 23 is actually met." *Dukes,* 603 F.3d at 587. After conducting that inquiry, the Court finds that Plaintiffs have satisfied the Rule 23(a) class certification prerequisites.

### A. Numerosity

■ Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Courts have found joinder impracticable in cases involving as few as forty class members. *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 482 (2d Cir.1995) (stating that numerosity is "presumed at a level of 40 members"); *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 262 (S.D.Cal.1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

■ Plaintiffs assert that "National Western's electronic business records establish that the nationwide RICO class encompasses more than 16,000 annuity policies." (Memo. ISO Motion at 11.) Joinder of this many plaintiffs would clearly be impracticable for purposes of this litigation.

■ Similarly, Plaintiffs claim that "[t]he proposed California Class encompasses near-

ly 2,500 annuity policies." (*Id.*) Again, complete joinder would be impracticable. As such, the Court finds the proposed class sufficiently numerous.

### B. Commonality & Typicality

 "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). To demonstrate commonality, the plaintiff must show "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). These requirements are "minimal" and "slight differences in class members' positions" will not prevent a finding of commonality. *Id.* at 1020; *Blackie*, 524 F.2d at 902.

 Typicality under subsection (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508 (citation omitted). Three factors go into this determination: (1) " 'whether other members have the same or similar injury, [ (2) ] whether the action is based on conduct which is not unique to the named plaintiffs, and [ (3) ] whether other class members have been injured by the same course of conduct.' " *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)). Although the representative claims need not "be substantially identical" to those of absent class members, they must be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020.

 The Court finds that Plaintiffs have demonstrated both commonality and typicality. All of the putative class members share both common factual and legal issues. These include, *inter alia*, the facts that all of these class members purchased the relevant annuities, all of the annuities have the complained-of features, and all of the class members were subjected to Defendant's standard materials. Additionally, the trier of fact will have to determine, *inter alia*, whether Defendant's representations were false or misleading, and whether there was causation for all of the putative class members. Further, the named Plaintiffs present the same claims and injuries as those advanced on behalf of the putative class members.

Defendant's counter arguments, at least as the Court reads them, are unpersuasive and address questions of the predominance of common questions rather than the simple existence of such questions. (*See, e.g.*, Opp. at 6–8 & 17–23.) As previously noted, commonality presents only a "minimal" bar to certification. *Hanlon*, 150 F.3d at 1020. It does not require "[a]ll questions of fact and law ... be common," but merely "a common core of salient facts." *Id.* at 1019. With typicality, Defendant's arguments do not alter the conclusion that the Named Plaintiffs' interests align with the interests of the class. *Hanon*, 976 F.2d at 508 (citation omitted). These Plaintiffs have the same alleged injury as other class members and were subjected to and injured by the same relevant conduct. *Id.* As such, the Court must find that their claims are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

### C. Adequacy

 Finally, Rule 23(a)(4) demands that class representatives "fairly and adequately protect the interests of the class." "The determination that a party would adequately protect the interests of the class is a question of fact that depends on the circumstances of each case." *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.1981). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

■■■ Plaintiffs claim that "the interests of the class representatives and the proposed Classes are fully aligned in determining whether National Western misrepresented the products sold to them." (Memo. ISO Motion at 14.) They also argue that Plaintiffs' counsel has "demonstrated that they are highly capable and willing to vigorously, efficiently and expeditiously prosecute this class action." (*Id.*) There are no substantial reasons to doubt the Representative Plaintiffs' or their counsels' adequacy. Therefore, the Court finds that the adequacy requirement has been satisfied.

■■■ Although Defendant does not directly challenge these claims, it argues that Plaintiff "Sweeney has been prejudiced by counsel's failure to inform her of the basic features of her annuity."[1] (Opp. at 32.) Defendant implies that this is litigation being driven by counsel and that "[i]f [they] were serving Sweeney's interests, they would have told her that she could make substantial withdrawals from, and change the annuity date of, her account." (*Id.*) It attempts to convince the Court that the named Plaintiffs simply misunderstand their policies' features and if these misunderstandings were corrected, this whole matter would go away. (*See, e.g., id.* at 6–8 & 31–32.) However, as at least one court has reasonably observed, "one has to take objections by defendants to adequacy of class counsel with a grain of salt." *Williams v. Balcor Pension Investors,* 150 F.R.D. 109, 119 n. 10 (N.D.Ill.1993). The evidence currently before this Court does not demonstrate that Plaintiffs' counsel has acted in such a way that would indicate that they are not adequate to pursue the present litigation on behalf of the Plaintiffs.

---

1. In Plaintiff Sweeney's declaration, she states that she did not know about how the " 'bonus' feature" on her policy actually worked and had she known at the time of purchase, she would not have purchased the annuity. (Doc. No. 177–6 at 86–91 (Sweeney Decl.) ¶¶ 7 & 8.) At Plaintiff Sweeney's deposition, she stated that she was suing National Western "[b]ecause [her] money is not available to" her. (Doc. No. 187–5 at 130–45 (Sweeney Depo.) at 20:19–21:21.) In light of

## III. RULE 23(b)'s REQUIREMENTS

As stated above, a class must meet all of the elements of Rule 23(a) and the elements of at least one subdivision of Rule 23(b). *Dukes,* 603 F.3d at 580. Plaintiffs request certification only under Rule 23(b)(3). (Memo. ISO Motion at 15.) Subdivision three requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### A. Predominance

■■■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon,* 150 F.3d at 1022. " 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.' " *Id.* (citation omitted). Put another way, the question is whether issues " 'subject to generalized proof . . . predominate over those issues that are subject only to individualized proof.' " *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir.2001) (quoting *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228 1233 (11th Cir.2000)) (abrogated on other grounds by statute).

■■■ "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess

the inconsistency, the Court will not embrace Defendant's invitation to find that Plaintiff Sweeney has no claims against Defendant. The testimony from Plaintiff Sweeney's deposition is not sufficiently clear to allow it to override the directly on point sworn declaration. Moreover, a plaintiff's feelings or motivations for filing a lawsuit do not change what claims are actually asserted therein.

the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D.Cal.2006). This "requires an assessment of the relationship between individual and common issues" which "takes into consideration all factors that militate in favor of, or against, class certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir.2009). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996); *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir.2009) ("Whether judicial economy will be served in a particular case turns on close scrutiny of 'the relationship between the common and individual issues.'" (quoting *Hanlon*, 150 F.3d at 1022)). This is the "overarching focus" of the Court's inquiry. *Vinole*, 571 F.3d at 946 (citing *Zinser*, 253 F.3d at 1189).

### 1. Nationwide Class

Plaintiffs' Nationwide Class alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). (*See* Memo. ISO Motion at 1.) The most significant questions on this claim are (1) the misrepresentations (*see, e.g., id.* at 15–18; Opp. at 13–21; Reply at 5–7) and (2) causation. (*See, e.g.,* Memo. ISO Motion at 18–22; Opp. at 23–28; Reply at 10–13.)

Plaintiffs believe that both are readily susceptible to common proof and thus common questions predominate. Their claims, allegedly, "are based on a common scheme and course of conduct, devised and orchestrated by National Western, to misrepresent the essential characteristics and costs of its deferred annuities." (Memo. ISO Motion at 15.) Specifically "National Western presented each Class member with standardized written sales materials that uniformly misrepresented the nature of its so-called 'bonus'

and its sales charges and concealed critical facts about the high embedded costs of its deferred annuities used to recoup the costs of the bonuses and commissions." (*Id.* at 16.)

As to causation, Plaintiffs offer two pieces of evidence. First, "[a]ll Class members *twice* affirmed in writing—once on the application and again on the disclosure form—that they received, reviewed and understood the National Western sales materials presented to them." [2] (*Id.* at 19 (emphasis in original).) Plaintiffs suggest that "'parties to a contract are aware of and rely on the representations and omissions in the contract.'" (*Id.* at 20 (citing *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 339 (N.D.Ill.1997)).) Second, Plaintiffs state that "[c]ausation can be inferred based on the clear and logical connection between National Western's uniform misrepresentations and the classwide (sic) injury suffered by purchasers as a result." (*Id.* at 21.)

Defendant, on the other hand, disputes both points. First, Defendant argues that there is no merit to Plaintiffs' claims. (*See* Opp. at 13–23.) With respect to the bonus, Defendant states it is not illusory. (*Id.* at 13.) This is because "National Western's bonuses are immediately credited at the contractually promised time and *never forfeited.*" (*Id.* at 14 (emphasis in original).) Moreover, "[t]he bonus is part of the overall realizable value to the purchase." (*Id.*) And, "whether a purchaser is better off with a bonus or a non-bonus annuity requires looking at the timing of their decisions and each purchaser's intended uses for the products." (*Id.* at 16.)

Its argument about the sales charges is quite similar. Defendant states that the commission paid to the agent is not an upfront sales fee. (*Id.* at 18.) "Every National Western annuitant's account [was] immediately credited with the full deposit amount." (*Id.*) Moreover "if the commissions are *later*

---

**2.** The disclosure form states: "I have received a copy of the Consumer Information & Disclosure Brochure and I have reviewed it with my agent and I understand it." (*See, e.g.,* Jodlowski Decl., Ex. 5 at NWL–Petry0000843.) The brochure containing the alleged misrepresentations states "The Agent MUST REVIEW this Information and Disclosure Brochure with the Applicant and both

MUST SIGN an original, which is REQUIRED with the annuity application. This Information and Disclosure Brochure is not part of the policy or certificate and does not modify them in any way. See the certificate for all terms, benefits, guarantees, limitations, restrictions, and exclusions." (Jodlowski Decl., Ex. 1 at NWL–Petry0007712 (capitalization in original).)

recouped through lower interest rates, by definition those commissions are not 'upfront sales fees.' " (*Id.*) Defendant also argues that the commissions are just like any other acquisition cost, and that this is just normal business. (*Id.* at 19–21.) Finally, Defendant suggests "that the only way to address the question of commissions is to look at the value provided by each individual sales person to the putative class member." (*Id.* at 21.)

Second, Defendant believes that Plaintiffs "fail[ ] to set forth a causal connection between the purported omissions and the named plaintiffs' injuries." (*Id.* at 23.) It argues that the Named Plaintiffs "admitted" that they did not rely on the alleged omissions. (*Id.* at 23–24.) And since they did not actually rely, the Court should not infer reliance from the evidence. (*Id.* at 24–25.) Moreover, Defendant believes that the Plaintiffs "relied on their agents' [oral] representations, including those representations relating to interest rates." (*Id.* at 24.) And, since the putative class members "have different knowledge, motivations, and expectations relating to their annuity purchases, . . . individualized issues of reliance predominate." (*Id.* at 25.)

On the larger issue of causation, Defendant does not see how the alleged misrepresentations actually caused economic loss. (*Id.* at 26.) Foremost, this is because Plaintiffs purchased the annuities " 'for reasons unrelated to defendant['s] misrepresentation." (*Id.*) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226 (2d Cir.2008)). But additionally, Defendant argues that there is no harm here because the "named plaintiffs have all made money through their annuities in an otherwise ruinous economy." (*Id.* at 27.) As to the reduced interest rates, it suggests that the Plaintiffs have not "show[n] that other insurers do not also recoup their acquisition costs." (*Id.*) But regardless, since these plaintiffs had "goals and needs based on their individualized life experiences, wealth, health, etc.," "the differences [between them] far outweigh the similari-

ties." [3] (*Id.* at 29.) Further, at oral argument Defendants claimed, citing *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), that Plaintiffs were required to show an actual out of pocket loss.

After considering these arguments, the Court finds that Plaintiffs have demonstrated that common questions predominate. First, the Court must dispose of a large fraction of Defendant's arguments as irrelevant. The arguments presented from page 13 of the opposition through page 23 are merits-related. Plaintiff alleges that the bonuses included on the relevant annuities are illusory and that Defendant charges upfront sales fees. These segments of the brief attempt to rebut those allegations. Such arguments, however, have nothing to do with the Rule 23 analysis. *Eisen*, 417 U.S. at 178, 94 S.Ct. 2140. As the Ninth Circuit as directed, the Court must not allow "either party [to] bootstrap[ ] a trial or summary judgment motion into the certification stage." *Dukes*, 603 F.3d at 591. Instead, the Court must determine whether common questions predominate with respect to Plaintiffs' ability to establish these claims.

With respect to the alleged misrepresentations, Plaintiffs have shown that they will be easily proven or disproven through common proof. The allegedly false and misleading claims were made in writing and given to each class member. They were uniform in material part, claiming the existence of bonuses and the lack of upfront sales charges. Whether those claims were false or misleading will be determinable on a class-wide basis, because their truth does not vary by putative class member. And the class members' signatures confirm that they received the relevant representations. Further, proving the existence of "a common scheme and course of conduct, devised and orchestrated by National Western," should be demonstrable through common proof. As such, there is no meaningful debate that these issues weigh on the side of commonality in the predominance inquiry.

3. Also of note, but not relevant, Defendant relies on a number of cases finding that claims such as Plaintiffs' should be dismissed. (*See* Opp. at 14–15.) Obviously these cases would be relevant if the Court were assessing a motion to dismiss.

But the Court has already decided a motion to dismiss, (*see* Doc. No. 71), and cursory citations in opposition to class certification are the wrong place to find Plaintiffs' claims legally insufficient.

The issue of causation, however, is substantially more convoluted. The Supreme Court has stated that a RICO claim requires " 'some direct relation between the injury asserted and the injurious conduct alleged.' " *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 2142, 170 L.Ed.2d 1012 (2008) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). In other words. "[c]ausation lies at the heart of a civil RICO claim" and "a plaintiff must show that the defendants' alleged misconduct proximately caused [his] injury." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir.2004) (citing *Holmes*, 503 U.S. at 268, 112 S.Ct. 1311). "In some cases, reliance may be 'a milepost on the road to causation.' " *Poulos*, 379 F.3d at 665 (citing *Blackie*, 524 F.2d at 906 n. 22). And although the plaintiff "need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations," it may well be that in some cases a showing of reliance is one (if not the only) method of establishing causation. *Bridge*, 128 S.Ct. at 2145.

In this case, Plaintiffs have established causation by showing reliance on the alleged misrepresentations.[4] (*See* Memo. ISO Motion at 19–22; Reply at 11–12.) As noted above, each class member received specific written materials from Defendant. (Memo. ISO Motion at 4–6.) Those materials all contain specific assertions which Plaintiffs claim are untrue. (*Id.* at 7–8.) Moreover, those assertions, in the form of claims about a "First Year Premium Bonus" and "No Upfront Sales Charges or Fees," are of the type of statement upon which a buyer would almost certainly rely in making an annuity purchase. And, in fact, the Named Plaintiffs' declarations make clear that they actually relied on these statements. (*See* Sweeney Decl. ¶ 8 ("Had I known at the time of the purchase the true facts about the National Western deferred annuity, particularly the commission and sales costs and the negative impact of the bonus, I would not purchased

(sic) the annuity."); Doc. No. 177–6 at 80–85 (Miller Decl.) ¶ 10 (same).)

Finding that reliance is a common question in this case is logical. Consumers are nearly certain to rely on prominent (and prominently marketed) features of a product which they purchase. And, as another court has observed "by definition, parties to a contract are aware of and rely on the representations and omissions in the contract." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 339 (N.D.Ill.1997). That observation is no less true in this case where the alleged misrepresentations are contained in written materials about the contract which, although actually not part of that contract, the Plaintiffs were required to read and understand.

Several other Courts have also come to this same conclusion, although in slightly different circumstances. In *Negrete v. Allianz Life Insurance Company of North America*, 238 F.R.D. 482 (C.D.Cal.2006), the Court found that "[g]eneralized proof that the common, uniform written sales marketing materials are misleading because they fail to disclose that the Allianz deferred annuities are worth substantially less than the prices paid for them, or would give rise to a common sense inference that no rational class member would purchase the annuities in questions upon adequate disclosure of the facts, regardless of their individual circumstances, may be employed as a means of establishing class-wide proof of damages." *Negrete*, 238 F.R.D. at 491. Other cases, such as *Garner v. Healy*, 184 F.R.D. 598 (N.D.Ill.1999), and *Peterson v. H & R Block Tax Services, Inc.*, 174 F.R.D. 78 (N.D.Ill.1997), held that class-wide reliance was obvious where no other logical explanation would support the class members' behavior. *See also Poulos*, 379 F.3d at 667–68. In short, "reliance can be shown where it provides the 'common sense' or 'logical explanation' for the behavior of plaintiffs and the members of the class." *Negrete*, 238 F.R.D. at 491–92 (quoting *Poulos*, 379 F.3d at 667–68).

---

4. Plaintiffs strongly protest that they "are not required to show reliance in order to prove causation." (Reply at 10.) However, this is somewhat mystifying since the only argument Plaintiffs advance to show causation is that they "relied on the National Western sales materials presented to them." (*Id.*)

Thus, since an inference of reliance is logical from Plaintiffs' evidence, this Court finds that Plaintiffs have shown that reliance is a common question.

The second half of the causation analysis here is whether there is common proof that the misrepresentations were related to Plaintiffs' alleged losses. Plaintiffs' presentation here is sufficiently persuasive. "Every dollar from an investment that is used to pay sales commissions is a direct loss to the investor." (Doc. No. 177–8 (Grenadier Decl.) ¶ 8.) So, "funds used to compensate sales people . . . reduce investment value dollar for dollar." (Id. ¶ 9.) As for the bonus, one expert opines that Defendant "must commensurately lower the series of subsequent interest crediting rates that would otherwise result in order to achieve its stated profitability objective." (Doc. No. 193 (Dellinger Decl.) ¶ 43.) Meaning that "the 'premium bonus' may produce no additional realizable value to a policyholder in the way of the market value of the Deferred Annuity; i.e., its cash surrender value." (Id. ¶ 48.)

Whether or not these allegations are true, this evidence shows that they should be readily provable class-wide. Moreover, they are directly related to the alleged misrepresentation upon which the Plaintiffs claim to have relied. Thus, the Court concludes that causation is susceptible to class treatment because it is a common question.

Defendant's arguments to the contrary are largely unpersuasive. First, Defendant harps on its claim that "the named plaintiffs . . . each relied on the representations of their sales agents[ ] and none relied on the so-called omissions relating to commissions or bonuses." (Opp. at 23.) With respect to Plaintiff Sweeney, Defendant claims "that she has no grounds for taking part in this lawsuit, and only participated because she did not understand the features of her annuity." (Id.) Although Ms. Sweeney's deposition testimony does not identify the bonus or sales charge as the reason why she is suing here, she offers those exact reasons in her declaration. (Compare Sweeney Depo. at 20:19–21:21 with Sweeney Decl. ¶¶ 7 & 8.) Moreover, Ms. Sweeney specifically stated at her deposition that the bonus was a factor when acquiring the annuity. (See, e.g., Sweeney Depo. at 83:2–18.)

As to Plaintiff Miller, he testified in his deposition that he did not "understand that there would be a bonus paid" in connection with his annuity purchase. (Doc. No. 187–6, Ex. S (Miller Depo.) at 171:13–17.) This, however, does not demonstrate a lack of reliance. At the time of the purchase, Mr. Miller attested that he read and understood Defendant's materials. In those materials were representations regarding a bonus. The fact that he did not recall his bonus six years later does not serve to disprove that at the time of the purchase he relied on the representations contained in Defendant's materials. Moreover, Plaintiff Miller's declaration affirmatively asserts reliance on the alleged misrepresentations. (Miller Decl. ¶ 10.) Given the ambiguity in the deposition testimony and the clarity of the declarations and attestations from the time of purchase, the Court cannot find that none of the Named Plaintiffs relied on the alleged misrepresentations.

Second, Defendant's assertion that Plaintiffs have not shown that they were injured is wrong. (See Opp. at 27.) To some extent, it appears that Defendant has ignored the Plaintiffs' theory about the undisclosed plan to diminish annuity returns. The fact that Plaintiffs' accounts increased in value does not mean that the Plaintiffs would not have received more value absent Defendants alleged reduction in the credited interest rate. Nor does the Court need to compare actual returns on these annuities to returns on other annuities to determine loss. Instead, injury and loss here are determinable by comparing actual returns to the returns which would have been achieved had the alleged misrepresentations been true.

█ Moreover, Defendant is incorrect that this is not a sufficient injury for purposes of a RICO claim. It is fairly clear from Ninth Circuit precedent that a loss need not be out of pocket in order to be a sufficient injury for RICO purposes. In Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir.2002), the Circuit found that a group of agricultural employees who claimed that the defendant knowingly hired illegal immigrant workers in order to depress wages. Id. at 1166. It found that this was a suffi-

cient injury to provide standing to pursue Plaintiffs' RICO claim. *Id.* at 1168–72.

This is a very similar theory to the one advanced by the Plaintiffs' here; that is, the earnings of Plaintiffs' annuities were diminished by Defendant unlawful scheme to misrepresent the bonus and upfront sales charges. In both cases, the plaintiffs actually made money but less money than they would have absent the defendants' conduct. Further, based on Plaintiffs' theory, the existence of a loss should also be easily provable through common evidence.

Therefore, the Court finds that Plaintiffs have demonstrated that common issues predominate over individual issues with respect to the Nationwide Class.

### 2. California Class

With the second class, Plaintiffs assert claims for "(1) Unlawful, Deceptive and Unfair Business Practices ("UCL") (Cal. Bus. & Prof.Code § 17200, *et seq.*); (2) Unlawful, Deceptive and Misleading Advertising ("FAL") (Cal. Bus. & Prof.Code § 17500, *et seq.*); and (3) violations of Elder Abuse statute (Cal. Welf. & Inst.Code § 15610, *et seq.*)." (Memo. ISO Motion at 24.) The Consolidated and Amended Class Action Complaint also sets forth state law causes of action for breach of fiduciary duty, fraudulent concealment, and unjust enrichment. (Doc. No. 54(CAC) ¶¶ 208–15, 220–27, & 234–38.)

▮▮▮ California Business and Professions Code section 17200, *et seq.* is also known as the Unfair Business Practices Act or Unfair Competition Law. "California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.' " *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674 (9th Cir.2007) (citing Cal. Bus. & Prof.Code §§ 17200, *et seq.*). "The 'unlawful' practices prohibited by ... section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861, 881, 85 Cal. Rptr.2d 301 (1999) (citations omitted). Under the unlawful prong, therefore, the UCL "borrows" violations of other laws and makes them independently actionable under the UCL. A practice that is not "unlawful" under the UCL may still be considered "unfair." *See Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180–81, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999). To be unfair, the plaintiff must be able to show that his claim is "tethered" to an underlying law. *Cel–Tech*, 20 Cal.4th at 186–87, 83 Cal. Rptr.2d 548, 973 P.2d 527. The fraudulent prong of section 17200 requires a showing "that 'members of the public are likely to be deceived.' Allegations of actual deception [and] reasonable reliance ... are unnecessary." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 197 Cal. Rptr. 783, 673 P.2d 660, 668 (1983).

The False Advertising Law contained in section 17500 "renders it unlawful for a defendant to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.' " *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir.2009) (citing Cal. Bus. & Prof.Code § 17500). This statement must also be "ma[de] or disseminate[d] ... in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet." Cal. Bus. & Prof.Code § 17500.

▮▮▮ Third, Plaintiffs allege financial abuse under California's Elder Abuse law, Cal. Welf. & Inst.Code § 15657.5. This law "reflect[s] the Legislature's intent to provide enhanced remedies to encourage private, civil enforcement of laws against elder abuse and neglect." *Intrieri v. Superior Court.*, 117 Cal.App.4th 72, 12 Cal.Rptr.3d 97, 105 (2004) (citation omitted). " 'Financial abuse' of an elder ... occurs when a person or entity ... [t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." Cal. Wel. & Inst.Code § 15610.30(a)(1) (2001).[5] Moreover, the de-

---

**5.** Section 15610.30 was amended effective January 1, 2009. *See* 2008 Cal. Legis. Serv. Ch. 475 (West). However, since this case predates that amendment, the Court refers to the version of the statute in force at the time of the filing of this action.

frauder must act "in bad faith." *Id.* § 15610.30(b).

■ A claim for breach of fiduciary duty requires plaintiffs to "show 'the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.'" *Roberts v. Lomanto,* 112 Cal. App.4th 1553, 1562, 5 Cal.Rptr.3d 866 (2003) (quoting *Pierce v. Lyman,* 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991)). And the elements of a fraudulent concealment "are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mut. of Omaha Life Ins. Co.,* 178 Cal.App.4th 830, 100 Cal.Rptr.3d 637, 653 (2009) (quoting *Roddenberry v. Roddenberry,* 44 Cal.App.4th 634, 51 Cal.Rptr.2d 907, 926 (1996)) (citation and quotation marks omitted).

■ Finally, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. *Peterson v. Cellco P'ship,* 164 Cal.App.4th 1583, 80 Cal.Rptr.3d 316, 323 (2008). "However, the mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. Thus, even when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,* 94 Cal.App.4th 151, 171 n. 23, 114 Cal.Rptr.2d 109 (2001).

■ The Court finds that Plaintiffs have established the predominance of common questions as to some of the legal theories but not to others. Common issues predominate in Plaintiffs' Unfair Competition Law claims. The California Supreme Court has held that the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II,* 207 P.3d at 39. To do so the "plaintiff must show that the misrepresentation was an immediate cause of the injury producing conduct, [however] the plaintiff need not demonstrate that it was the only cause." *Id.* " 'It is enough that the representation has played a substantial part and show had been a substantial factor in influencing his decision. Moreover, a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material,' " that is, " 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.' " *Id.* (citations omitted). That said, this standing requirement does not apply to absent class members "where class requirements have otherwise been found to exist." *Id.* at 38.

■ Here, Plaintiffs allege that Defendant's conduct was unlawful, unfair, and fraudulent. Class treatment is proper on all three prongs. The overall issue of reliance is a common question. Specifically, the absent class members need not prove individual reliance and the individual questions going to the Named Representatives' reliance do not predominate.[6] Similarly, Plaintiffs' damages theory is common to all class members and readily determinable.

Under the unlawful prong, class treatment is clearly proper in light of the above decision to certify the RICO class. *See South Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal.App.4th 861, 881, 85 Cal. Rptr.2d 301 (1999) ("The unlawful practices prohibited by . . . section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regula-

---

**6.** The Court also reiterates that the evidence presently before the Court indicates that the Named Plaintiffs relied on Defendant's representations. *See supra.* However, the California Supreme Court has indicated that if named plaintiffs cannot show reliance, "the proper procedure . . . [is to] grant leave to amend to redefine the class or add a new class representative." *In re Tobacco II,* 93 Cal.Rptr.3d 559, 207 P.3d at 41.

tory, or court-made." (internal citation and quotation marks omitted)). On the unfair prong, the Court must come to the same conclusion. The evidence to date shows class-wide practices by Defendant. There is no indication that the "unfairness" of those practices differs from individual to individual. In fact, everything presently before the Court indicates that this determination is entirely dependent on common proof. For the fraudulent prong, Plaintiffs have shown that the alleged misrepresentations are common to every class member, making the relevant considerations a common, rather than individual, question.

■■■ The Court also finds that common questions predominate as to Plaintiffs' False Advertising Law claim. Although neither Plaintiffs nor Defendant directly address this issue, it does not appear that the FAL claim presents any individual issue. For example, whether the bonus and up-front fee language is "untrue or misleading" is a common question. Similarly whether Defendant's acts constitute the requisite dissemination is also easily addressed on a class wide basis. Furthermore, Defendant's knowledge regarding the statements' truth present common rather than individual questions.

Moreover, since the Elder Abuse claim is premised on the same acts, the Court again finds that common questions predominate. Plaintiffs propose a manageable class-wide method of showing both reliance and causation, and the Court does not see what other individual issues would weigh against certification.

■■■ On the breach of fiduciary duty, the Court finds that individual issues predominate. Plaintiffs must show the existence of a fiduciary relationship, a breach of that relationship, and damages proximately caused by the breach. *Roberts v. Lomanto*, 112 Cal. App.4th 1553, 1562, 5 Cal.Rptr.3d 866 (2003) (quoting *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991)). Plaintiffs have not, however, indicated how common questions would control here. At best they state that the Court "rejected" Defendant's "contention that insurers owe no fiduciary duty to insureds." (Reply at 19 (citing Doc. No. 71 (MTD Order)).) What that Order actually holds is that it is possible that

Defendant owed Plaintiffs a fiduciary duty based on Plaintiffs' allegations. (MTD Order at 21–22.) Such a duty would arise where "sales agents … held themselves out as objective financial planners who act in Plaintiffs' best interests." (*Id.* at 20.) However, there is no evidence before the Court that all of the sales agents acted in such a way. Absent explicit direction by Defendant which was universally followed by agents, this is an inherently individual inquiry making certification inappropriate on this claim.

■■■ The fraudulent concealment claim is amenable to class treatment. Although Defendant believes that this claim should not be certified because reliance is an individual question, the Court has already rejected this argument. (Opp. at 29–39.) As to the other prongs of the test, they are all largely common. Defendant's concealment or suppression of facts, its intent, and whether it had a duty to disclose those facts do not involve individual issues because the representations were all presented in common form and for common purposes. The existence of damages and causation are also common across the whole class.

■■■ Finally, common questions predominate as to the unjust enrichment claim. The issue of harm to the plaintiffs, the benefit, and the retention of that benefit are all easily resolved class wide. In fact, it is unclear that any issues on the unjust enrichment claim are individual.

### B. The Superiority Requirement

■■■ Rule 23(b)(3) sets forth four factors to consider when determining whether class treatment is superior. Those factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R.Civ.P. 23(b)(3). This focuses the Court's attention "on the efficiency and economy elements of the class action" in order to ensure that real benefit would be gained by class

treatment. *Zinser v. Accufix Research Ins., Inc.,* 253 F.3d 1180, 1190 (9th Cir.2001) (quoting 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1780 at 562 (2d ed.1986)). And like the rest of the certification determination, the Court has "broad discretion." *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 210 (9th Cir.1975).

█ The Court finds that class action treatment is superior. Although the individual class members' interests are not minuscule, they have little interest in individually controlling actions. This is because the amount of damages suffered by each plaintiff is not apparent simply by virtue of owning the policy. Next, because one of the classes involves California consumers and California law, it is desirable to concentrate the litigation here. Finally, there is no real indication that this would be difficult to manage as a class action.

On the other side, there appears to be some litigation that involves these same plaintiffs and the same controversy. However, according to the parties there is only partial overlap of these claims and parties. As such, this does not demonstrate that the class action is not the superior method for resolving this claim. Thus, the Court finds that class action treatment is superior.

## CONCLUSION

For the reasons stated, the Court finds that Plaintiffs have satisfied the requirements for certification under Federal Rule of Civil Procedure 23. Therefore, the renewed motion for class certification is **GRANTED IN PART AND DENIED IN PART** and the National RICO Class is **CERTIFIED** in full and the California Class is **CERTIFIED** as to all claims except breach of fiduciary duty.

IT IS SO ORDERED.